**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Heriberto Valiente, individually and on behalf
of all others similarly situated,

Plaintiff,

- against -

StockX, Inc.,

Defendant

Class Action Complaint

Jury Trial Demanded

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1.     StockX, Inc. ("Defendant") operates an online secondary marketplace which sells (1) luxury items including collectible sneakers, electronics, handbags, and other collectibles where it purports to assure buyers and sellers that all items sold through its platform are authentic and (2) non-fungible tokens ("NFTs") corresponding to tangible physical goods ("Product").[1]

2.     Defendant touts its comprehensive database of fraudulent practices, proprietary methods based on hundreds of datapoints, advanced technology and expert guidance, as reasons why it is 99.95% accurate in authenticating all items sold through its platform.

3.     In return for assuring buyers and sellers that items sold through its platform are "100% authentic," StockX receives fees from each transaction.

4.     However, credible reports indicate that a significant percentage of the items sold through StockX are not "100% Verified Authentic," but counterfeit.

5.     Defendant does not accept returns when customers identify counterfeit items.

---

[1] Stockx.com.

6.      Beyond the sale of allegedly non-authentic items, Defendant recently began selling StockX Vault NFTs, linked to corresponding to physical pairs of collectible sneakers held in its facilities.

7.      However, a recent story by Input Magazine detailed several reasons why the Vault NFTs are of limited to no value.

8.      First, despite promises the purchaser may redeem the NFTs at any time, the "redemption process is not currently available."

9.      Second, many of the Products corresponding to the NFTs do not presently exist.

10.     Third, the NFTs are sold at several times the value of the physical products they are linked to.

11.     Fourth, Defendant retains the right to "redeem" their NFTs for an undefined "Experiential Component," consisting of vaguely defined "experiences" in place of tangible goods.

12.     Fifth, consumers purchasing the Vault NFTs believe incorrectly that it is partnering with global sneaker brands such as Nike and Adidas for NFTs relating to their sneakers.

13.     This is evident through discussion on the internet and in social media.

14.     One Twitter user was curious if the StockX Vault NFTs were "endorsed/approved by Nike/Adidas etc [and] wondered whether Nike had granted StockX a license" to use the branding of those companies.

15.     Another commenter incorrectly believed that "Nike gets a small commission every time an NFT is purchased [from StockX's Vault]."

16.      The association with market leading sneaker companies assured consumers that what they were purchasing had value, backed by large established companies.

17.     Defendant makes other representations and omissions with respect to the Products

and its platform which are false and misleading.

18.    Reasonable consumers must and do rely on a company to honestly and lawfully market and describe the components, attributes, and features of its products, platform and services, relative to itself and other comparable products or alternatives.

19.    The value of the Products that Plaintiff purchased or sold was materially less than its value as represented by Defendant because this price was inflated by the false expectation that all items sold through the platform were authentic and that the StockX Vault NFTs had value.

20.    The fees charged by Defendant were higher than they would have been if there was knowledge that a significant number and/or percentage of items on its site were not 100% authentic.

21.    Defendant sold more of the Products and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

22.    Had Plaintiff and proposed class members known the truth, they would not have bought the Products or would have paid less for them.

23.    The Products are sold for a price premium compared to other similar products, higher prices than they would otherwise be sold for, absent the misleading representations and omissions about the platform's ability to independently verify the items it sold and the value of the NFTs.

Jurisdiction and Venue

24.    Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

25.    The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

26.    Plaintiff Heriberto Valiente is a citizen of Florida.

27.     Defendant StockX, Inc. is a Delaware corporation with a principal place of business in Detroit, Wayne County, Michigan.

28.     The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen

29.     The members of the class Plaintiff seeks to represent are more than 100, because the platform has thousands of users in the states covered by Plaintiff's proposed classes.

30.     The Products are available to consumers from Defendant's website.

31.     Venue is in the Miami Division in this District because a substantial part of the events or omissions giving rise to these claims occurred in Miami-Dade County, including Plaintiff's purchase, sale, and/or use of the Products and awareness and/or experiences of and with the issues described here.

<u>Parties</u>

32.     Plaintiff Heriberto Valiente is a citizen of Miami, Miami-Dade, Florida.

33.     Defendant StockX, Inc. is a Delaware corporation with a principal place of business in Detroit, Michigan, Wayne County.

34.     Plaintiff utilized Defendant's platform to engage in the purchase and/or sale of collectible sneakers and/or other items.

35.     Plaintiff chose to use Defendant's platform based on its assurances it would not just accurately confirm the authenticity of items he bought or sold, but that it verified the provenance of all items sold through its platform, which assured him his transactions would only involve authentic and non-counterfeit items.

36.     Plaintiff purchased or considered purchasing Defendant's NFTs, because he believed they had value that could not be unilaterally taken back and was not subject to other prejudicial

conditions.

37.     The Products are available to consumers from Defendant's website.

38.     Plaintiff used the platform to buy and/or sell items on one or more occasions within the statutes of limitations for each cause of action alleged, at stockx.com, in November, 2021, and/or among other times.

39.     Plaintiff believed and expected the Products bought and sold on the platform were 100% authentic without any counterfeits, and his monies went towards the fees charged to assure this, and believed the NFTs sold had independent, and not illusory value because that is what the representations and omissions said and implied.

40.     Plaintiff relied on the words, terms coloring, descriptions, layout, placement, packaging, tags, and/or images on the Product, on the labeling, statements, omissions, claims, statements, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Products and separately, through digital, audio, and print marketing.

41.     Plaintiff bought the Products at or exceeding the prices which would have been charged had the information identified here been available to him.

42.     Plaintiff would not have purchased the Products if he knew the representations and omissions were false and misleading or would have paid less for them.

43.     Plaintiff chose between Defendant's Products and products represented similarly on other platforms, but which did not misrepresent their attributes, requirements, authenticity, value, instructions, features, and/or components.

44.     Plaintiff intends to, seeks to, and will purchase the Products again when he can do so with the assurance the Products' representations are consistent with their authenticity, value,

abilities, attributes, and/or composition.

45.    Plaintiff is unable to rely on the labeling and representations not only of Defendant's platform, but other similar platforms guaranteeing authenticity, because he is unsure whether those representations are truthful.

Class Allegations

46.    Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Florida Class:** All persons in the State of Florida who purchased or sold Products on Defendant's platform during the statutes of limitations for each cause of action alleged; and

> **Consumer Fraud Multi-State Class**: All persons in the States of Alabama, Michigan, Texas, New Mexico, and  Louisiana, who purchased or sold Products on Defendant's platform during the statutes of limitations for each cause of action alleged.

47.    Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

48.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

49.    Plaintiff is an adequate representative because his interests do not conflict with other members.

50.    No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

51.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

52.    Plaintiff's counsel is competent and experienced in complex class action litigation

and intends to protect class members' interests adequately and fairly.

<u>Florida Deceptive and Unfair Trade Practices Act</u>
<u>("FDUTPA"), Fla. Stat. § 501.201 et seq.</u>

<u>(Consumer Protection Statute)</u>

53.    Plaintiff incorporates by reference all preceding paragraphs.

54.    Plaintiff believed the Products bought and sold on the platform were 100% authentic without any counterfeits, and his monies went towards the fees charged to assure this, and believed the NFTs sold had independent, and not illusory value.

55.    Defendant's false, misleading and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

56.    Defendant misrepresented the Products and platform through statements, omissions, ambiguities, half-truths and/or actions.

57.    Plaintiff relied on the representations and omissions to believe the items bought and sold on the platform were 100% authentic without any counterfeits, and his monies went towards the fees charged to assure this, and believed the NFTs sold had independent, and not illusory value.

58.     Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

<u>Violation of State Consumer Fraud Acts</u>

<u>(On Behalf of the Consumer Fraud Multi-State Class)</u>

59.    The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

60.    The members of the Consumer Fraud Multi-State Class reserve their rights to assert

their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

61.    Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct.

62.    As a result of Defendant's use of artifice, and unfair or deceptive acts or business practices, the members of the Consumer Fraud Multi-State Class sustained damages.

63.    Defendant's conduct showed motive and a reckless disregard of the truth such that an award of punitive damages is appropriate.

<u>Breaches of Express Warranty,</u>
<u>Implied Warranty of Merchantability/Fitness for a Particular Purpose and</u>
<u>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

64.    The Products were manufactured, identified, authenticated, verified, marketed and/or sold by or through Defendant, and expressly and impliedly warranted to Plaintiff that the items bought and sold on the platform were 100% authentic without any counterfeits, and his monies went towards the fees charged to assure this, and believed the NFTs sold had independent, and not illusory value.

65.    Defendant directly marketed the Products to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on its website, in print circulars, direct mail, social media, product descriptions, including any distributed to resellers, and/or targeted digital advertising.

66.    Defendant knew the product attributes that potential customers like Plaintiff were seeking, such as guaranteed authentic items without the danger of counterfeits, and NFTs with real, not illusory value, and developed its marketing and labeling to directly meet those needs and desires.

67.    Defendant's representations about the Products were conveyed in writing and

promised items sold through its platform would be defect-free, and Plaintiff understood this meant that items bought and sold on the platform were 100% authentic without any counterfeits, and his monies went towards the fees charged to assure this, and believed the NFTs sold had independent, and not illusory value.

68.    Defendant's representations affirmed and promised that the Products bought and sold on the platform were 100% authentic without any counterfeits, and his monies went towards the fees charged to assure this, and believed the NFTs sold had independent, and not illusory value.

69.    Defendant described the Products so Plaintiff believed the items bought and sold on the platform were 100% authentic without any counterfeits, and his monies went towards the fees charged to assure this, and believed the NFTs sold had independent, and not illusory value, which became part of the basis of the bargain that they would conform to these affirmations and promises.

70.    Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Products.

71.    This duty is based on Defendant's outsized role in the market for these types of Products, the leading secondary platform for verifiable luxury goods without the danger of counterfeit goods.

72.    Plaintiff recently became aware of Defendant's breach of the Products' warranties.

73.    Plaintiff provided or will provide notice to Defendant, its agents, representatives, retailers, and their employees.

74.    Plaintiff hereby provides notice to Defendant that it breached the express and implied warranties associated with the Product.

75.    Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices,

and by consumers through online forums.

76.   The Products did not conform to their affirmations of fact and promises due to Defendant's actions.

77.   The Products were not merchantable because they were not fit to pass in the trade as advertised, not fit for the ordinary purpose for which they were intended and did not conform to the promises or affirmations of fact made on their packaging, containers or labels, because the items were marketed as if everything bought and sold on the platform were 100% authentic without any counterfeits, and that the NFTs sold had independent, and not illusory value.

78.   The Products were not merchantable because Defendant had reason to know the particular purpose for which the Products were bought by Plaintiff, because he expected items bought and sold on the platform were 100% authentic without any counterfeits, and believed the NFTs sold had independent, and not illusory value, and he relied on Defendant's skill and judgment to select or furnish such suitable products.

79.   Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

80.   Defendant had a duty to truthfully represent the Products, which it breached.

81.   This duty was non-delegable, and based on Defendant's position, holding itself out as having special knowledge and experience in this area, the leading secondary platform for verifiable luxury goods without the danger of counterfeit goods and a source of NFTs based on such goods.

82.   Defendant's representations and omissions regarding the Products and its platform went beyond the specific representations, as they incorporated the extra-labeling promises and

commitments to quality, transparency and putting buyers and sellers first, that it has been known for.

83.     These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

84.     The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

85.     Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Products.

86.     Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

Fraud

87.     Defendant misrepresented and/or omitted the attributes and qualities of the Products, that items bought and sold on the platform were 100% authentic without any counterfeits, and that the NFTs sold had independent, and not illusory value.

88.     Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity and deception, through statements and omissions.

89.     Defendant knew of the issues described here yet did not address them.

90.     Defendant's fraudulent intent is evinced by its knowledge that the Products was not consistent with its representations.

Unjust Enrichment

91.     Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of Plaintiff and class members,

who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1.  Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3.  Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

4.  Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

5.  Other and further relief as the Court deems just and proper.

Dated:   May 12, 2022

                        Respectfully submitted,

                        /s/Will Wright
                        The Wright Law Office, P.A.
                        Will Wright
                        515 N Flagler Dr Ste P300
                        West Palm Beach FL 33401-4326
                        Tel: (561) 514-0904
                        willwright@wrightlawoffice.com

                        Sheehan & Associates, P.C.
                        Spencer Sheehan*
                        60 Cuttermill Rd Ste 412
                        Great Neck NY 11021
                        Tel: (516) 268-7080
                        spencer@spencersheehan.com
                        *Pro Hac Vice Application Forthcoming